The NATIONAL ORGANIZATION FOR WOMEN, NEW YORK CHAPTER, Debra Brown, Shirley Burgest, Egda Cordero, Deborah Hall, Evan Ruderman, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

WATERFRONT COMMISSION OF NEW YORK HARBOR and Leonard Newman, Defendants.

No. 78 Civ. 4075.

United States District Court, S. D. New York.

Oct. 30, 1978.

Lewis F. Tesser, New York City, for plaintiffs; Marjorie L. Altman, New York City, of counsel.

Irving Malchman, Director of Litigation and Research, Waterfront Commission of New York Harbor, New York City, for defendants; Ellen J. Bronzo, Asst. Counsel, New York City, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

In this Civil Rights Act suit brought under 42 U.S.C. §§ 1981 and 1983, plaintiffs, the New York Chapter of the National Organization for Women ("NOW") and various individual women, charge defendants, the Waterfront Commission of New York Harbor ("the Commission") and its executive director Leonard Newman, with discriminating against women and members of minority groups in registering applicants for work as cargo checkers. Now before us are an application by plaintiffs for a preliminary injunction and a motion by defendants for summary judgment.[1] We deny the motion for a preliminary injunction and the motion for summary judgment insofar as it is addressed to plaintiffs' sex discrimination claim. We grant the motion for summary judgment insofar as it is addressed to plaintiff's claims of ethnic or racial discrimination.

The basic facts are not in dispute. After holding public hearings in March of 1978,[2]

---

1. Defendants' motion was made upon oral argument on plaintiffs' motion for a preliminary injunction. Both parties agreed that the formalities of local Rule 9(g) could be waived and that the record was adequate for us to pass upon defendants' motion.

2. No women or NOW representatives attended any of the hearings. Plaintiffs assert that they

the Commission issued Determination No. 15, which opened some 200 cargo checker positions to persons registered with the Commission as longshoremen. Under Determination 15, longshoremen are to be accepted for voluntary transfer to the checker jobs on the basis of seniority, with preference given to longshoremen whose physical disabilities prevent them from performing strenuous work. Since few, if any, women are registered as longshoremen, an inevitable consequence of the adoption of Determination 15 is the exclusion of women from the 200 checker jobs. There is no contention that women could not perform checker work.

The Commission explains its adoption of Determination 15 as based upon considerations peculiar to the harbor. The waterfront work force includes large numbers of longshoremen who receive a guaranteed annual income ("GAI") regardless of whether they do in fact work. During the last contract year, for example, of 9200 registered longshoremen, some 500 received GAI payments of approximately $16,640 without working at all. An additional 2000 longshoremen received GAI payments of over $10,000. Needless to say, such payments are a considerable drain on the resources of the harbor.[3] The Commission takes the position that Determination 15 is designed to alleviate this problem by making idle GAI recipients productive as cargo checkers.

The Commission has already granted temporary checker registrations to 169 longshoremen pursuant to Determination 15.[4] We have been advised that of these 169 longshoremen, some 35 (20.7%) are black or Hispanic. The record does not reveal how many of these 169 men are GAI recipients. The Commission has also, by resolution dated September 5, 1978, opened the longshoremen's register to some 750 persons on a temporary basis.

The validity of Determination 15 was challenged unsuccessfully in federal district court in New Jersey by the New York Shipping Association, Inc. and the International Longshoremen's Union, AFL–CIO. In the New Jersey action, the court rejected contentions that Determination 15 exceeded the scope of the Commission's delegated powers and was in conflict with, and thus preempted by, federal labor law. *New York Shipping Ass'n, Inc., et al. v. Waterfront Comm'n of New York Harbor* (D.N.J. June 1, 1978) Civ. No. 78–995, slip op. In upholding the validity of Determination 15, Judge Meanor held (slip op. at 10):

"Both the voluntary transfer of 200 longshoremen—and the stated preference for disabled workers—are reasonable, practical and economical solutions that are entirely consistent with the purposes and policies of the Act [the Waterfront Commission Compact, § 5–p, N.J.S.A. 32:23–114; N.Y.Laws 1953, c. 882, McK. Unconsol. Laws § 9801 et seq.]. Determination 15 suggests a solution which would provide an enormous overall financial benefit to the entire Harbor. Employers would save large quantities of money—and the overall efficiency of the Port would increase."

There is no evidence now before us suggesting that Determination 15 would not in fact serve the purposes Judge Meanor ascribed to it. Nor is there any evidence that the Commission in adopting it was animated by some sinister impulse, rather than by a desire to reach these commendable ends.[5]

Defendants contend, citing *Washington v. Davis* (1976) 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 and *Arlington Heights v. Metropolitan Housing Development Corp.*

did not in fact learn of the hearings until after they had taken place.

3. GAI payments during the 1976–77 fiscal year totalled over $30,000,000.

4. Applications are still being processed for the remaining 31 checker positions.

5. For the purpose of considering the motion for preliminary injunction, we accept defendants' contention that the addition of 750 temporary longshoremen is necessitated by the impossibility of motivating GAI recipients to perform strenuous work.

(1977) 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450, that there is no evidence of discriminatory intent required to sustain a discrimination claim under Sections 1981 and 1983. Defendants' argument, however, misconstrues the intent requirement as it has been interpreted by the Court of Appeals for this Circuit. In *Arthur v. Nyquist* (2d Cir. 1978) 573 F.2d 134, 142–43, a school desegregation case, the court held that:

> "When . . . actions have the 'natural, probable, and foreseeable result of increasing or perpetuating segregation,' a presumption of segregative purpose is created. The burden of proof then shifts to defendant officials . . . to demonstrate that no reasonable alternative policy would have achieved the same permissible educational goals with less segregative effect. When such a showing cannot be made, it is entirely reasonable to infer that the officials acted with unlawful segregative intent."

Whether or not the Supreme Court will ultimately conclude that the foregoing is a correct formulation of the effect of its *Washington* and *Arlington Heights* decisions, it is binding on us at this moment. We find it to control the instant case.[6]

■ At this point in the litigation, it cannot be said that there is no question of fact as to whether defendants can sustain the burden they must bear under *Arthur v. Nyquist, supra,* of rebutting the presumption of discriminatory intent that arises from the foreseeable exclusion of women.[7] Their motion for summary judgment must therefore be denied.

Plaintiffs, however, have not demonstrated any substantial likelihood that defendants will not ultimately be able to meet that burden.[8] Nor have they demonstrated that the balance of harddships tips decidedly—if at all—in their favor. Plaintiffs having offered no evidence on that subject, we could only speculate as to the relative severity of any hardships to be suffered. Taking guidance from the recent decision in *Caulfield v. Board of Education of the City of New York* (2d Cir. 1978) 583 F.2d 605, 610, this is a step we are not inclined to take.[9] Plaintiffs' application for a preliminary injunction is accordingly denied.

■ Different considerations, however, apply with respect to plaintiffs' claims of discrimination against blacks and Hispanics. Although a presumption of discriminatory intent arises from the foreseeable exclusion of women, *Arthur v. Nyquist, supra,* blacks and Hispanics were neither foreseeably nor

---

6. Also see *Brinkman v. Gilligan* (6th Cir. 1978) 583 F.2d 243; *United States v. Texas Education Agency* (5th Cir. 1977) 564 F.2d 162; *Hart v. Community School District Board of Education* (2d Cir. 1975) 512 F.2d 37; *Amrstrong v. O'Connell* (E.D.Wis.1978) 451 F.Supp. 817, 822–23; *Feeney v. Commonwealth of Mass.* (D.Mass.1978) 451 F.Supp. 143, probable jurisdiction noted sub nom. *Personnel Administrator of Mass. v. Feeney,* (1978) —— U.S. ——, 99 S.Ct. 247, 58 L.Ed.2d 236.

7. We note that the record does not reveal how many of the 200 checker positions have been, or will be, filled by GAI recipients. To the extent that these jobs are not so filled, it could be argued that the Commission could have served its purpose with less exclusionary impact.

8. The Title VII cases relied upon by plaintiffs are inapposite here.

9. There are, to be sure, potential hardships for both sides here. We are now inclined to believe, without finally deciding, that the Eleventh Amendment would preclude any damage award to plaintiffs. See *Trotman v. Palisades Interstate Park Com'n* (2d Cir. 1977) 557 F.2d 35. There are also, however, substantial equities in defendants' favor. Plaintiffs did not bring this challenge to Determination 15 until August 30, 1978, some five months after its adoption, and some three months after its validity was upheld in the District Court of New Jersey. By the time this suit was brought, implementation of Determination 15 was imminent. Delaying that implementation would come at some cost to the harbor.

actually excluded.[10] Accordingly, no presumption of an intent to discriminate on the basis of race or ethnicity arises here. Since plaintiffs offer no other evidence of intent to discriminate against blacks and Hispanics, we grant defendants' motion for summary judgment insofar as it is addressed to claims of such discrimination.

 Defendants also contend that the conceded absence of any individual plaintiff or NOW representative from the Commission's public hearings is a failure to exhaust administrative remedies that should bar this suit. We disagree. Defendants cite no case in which a complaint was dismissed for absence from a similar hearing. We find an extension of the exhaustion requirement to this situation to be unwarranted.

 Finally, defendants argue that the suit is time-barred since it was not brought within the four-month period applicable in Article 78 proceedings against state boards or officers. Defendants have cited no case where a court found this statute of limitations applicable to civil rights claims. To the contrary, the Court of Appeals for this Circuit has declared that the very argument raised here "should be rejected on the ground that it would substantially impair the federal right sought to be enforced." *Swan v. Board of Higher Education of City of New York* (2d Cir. 1963) 319 F.2d 56, 60. Also see *Romer v. Leary* (2d Cir. 1970) 425 F.2d 186. We find these precedents controlling and reject defendants' time-bar contention.

In summary, we deny plaintiffs' application for a preliminary injunction. We also deny defendants' motion for summary judgment insofar as it is addressed to plaintiffs' sex discrimination claims. We grant defendants' motion for summary judgment insofar as it is addressed to claims of racial or ethnic discrimination.

SO ORDERED.

---

10. As we have noted, some 21% of the men temporarily registered pursuant to Determination 15 are either black or Hispanic.